# **EXHIBIT A**

**(Proposed Order)**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AVADIM HEALTH, INC., et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 21-10883 (CTG)<br><br>(Jointly Administered)<br>**Re: Docket No. __** |

**ORDER (I) AUTHORIZING THE DEBTORS TO (A) RETAIN CARL MARKS ADVISORY GROUP LLC TO PROVIDE THE DEBTORS A CHIEF RESTRUCTURING OFFICER AND CERTAIN ADDITIONAL PERSONNEL AND (B) DESIGNATE KEITH DANIELS AS CHIEF RESTRUCTURING OFFICER AND SCOTT PASQUITH AS CHIEF FINANCIAL OFFICER, EFFECTIVE AS OF THE PETITION DATE AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") (i) authorizing the Debtors to (a) retain and employ Carl Marks Advisory Group LLC ("CMAG") to provide the Debtors with a CRO and certain Additional Personnel to assist the CRO and (b) designate Keith Daniels as the Debtors' CRO and Scott Pasquith as the Debtors' CFO, effective as of the Petition Date, on the terms set forth in the Engagement Letter attached hereto as **Exhibit 1**; and (b) granting related relief, all as more fully set forth in the Motion; and upon the Daniels Declaration; and this Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found

---

[1] The Debtors, along with the last four (4) digits of each Debtor's federal tax identification number are: Avadim Health, Inc. (8411); Avadim Health IP, Inc. (7594); Bionome Properties Corp. (6483); Quality Assurance Associates, Inc. (5613); and Relion Manufacturing, Inc. (0430). The Debtors' business address is 81 Thompson Street, Asheville, NC 28803.

[2] Any initially capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in, as applicable, the Motion or the Engagement Letter.

that the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted as set forth herein.

2. Pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors are authorized to (i) retain and employ CMAG and (ii) designate Keith Daniels as Chief Restructuring Officer and Scott Pasquith as Chief Financial Officer, in each case effective as of the Petition Date.

3. The terms of the Engagement Letter, including without limitation, the compensation provisions and the indemnification provisions, as modified by the Motion and this Order, are reasonable terms and conditions of employment and are hereby approved.

4. The Debtors are hereby authorized to retain CMAG to provide the Debtors with a CRO, CFO, and certain Additional Personnel to assist the CRO, and to designate Keith

Daniels as the Debtors' CRO and Scott Pasquith as the Debtors' CFO, effective as of the Petition Date, on the terms and conditions set forth in the Motion and the Engagement Letter, as modified by this order, subject to the following terms, which apply notwithstanding anything in the Engagement Letter or the Motion or any exhibits related thereto to the contrary:

    a.    CMAG and its affiliates shall not act in any other capacity (for example, and without limitation, as a financial advisor, claims agent/claims administrator, or investor/acquirer) in connection with the above-captioned chapter 11 cases;

    b.    In the event the Debtors seek to have the Additional Personnel assume executive officer positions that are different than the positions disclosed in the Motion, or to materially change the terms of the engagement by either: (i) modifying the functions of the Additional Personnel; (ii) adding new executive officers; or (iii) altering or expanding the scope of the engagement, a motion to modify the retention shall be filed;

    c.    CMAG is not required to submit applications for approval of compensation and reimbursement of expenses under sections 330 and 331 of the Bankruptcy Code.  CMAG shall file with the Court, with copies to the Notice Parties, a monthly report on the engagement for the previous month (a "<u>Monthly Staffing Report</u>").  Such Monthly Staffing Report will include the names of and hours worked by the CRO, CFO, and all full- and part-time Additional Personnel involved in these chapter 11 cases for the month, and a summary of reimbursable expenses incurred for the relevant period.  The Monthly Staffing Report will further summarize hours worked by activity category (*e.g.*, financial management, operational management, hearings, etc.) and reimbursable expenses by expense category.  The time records shall (i) be appended to the Monthly Staffing Reports, (ii) contain detailed time entries describing the task(s) performed and (iii) be organized by project category (but may be redacted to protect any attorney-client privilege or other applicable privilege).  The CRO, CFO, and Additional Personnel will maintain time entry records summarizing major activities and issues that they addressed, and the time entries shall identify the time spent completing each task in half-hour increments.  The Notice Parties shall have 14 days after the date each Monthly Report is served on the Notice Parties to object to such Monthly Staffing Report.  In the event an objection is raised and not consensually resolved between the Debtors and the objecting party, the objected to portion of the Monthly Staffing Report shall be subject to review of the Court.  The Monthly Staffing Report, CMAG's staffing decisions, and all compensation identified will be subject to review by the Court in the event an objection is filed.  CMAG will file its first Monthly Staffing Report by July 20, 2021 for the period covering the Petition Date through June 30, 2021.;

3

    d. Notwithstanding anything to the contrary contained in the Motion, Engagement Letter, or any exhibits thereto, during the course of the chapter 11 cases, CMAG will only seek reimbursement of actual and necessary expenses itemized in the Monthly Staffing Reports;

    e. Subject to the Notice Parties' rights to object as set forth in paragraph (c) above, the Debtors are authorized, but not directed, to pay, in the ordinary course of business, all amounts invoiced by CMAG for fees and expenses incurred in connection with CMAG's retention;

    f. No principal, employee, or independent contractor of CMAG and its affiliates shall serve as a director of any of the above-captioned Debtors during the pendency of the above-captioned chapter 11 cases;

    g. Success fees, transaction fees, or other back-end fees shall be approved by the Court at the conclusion of case on a reasonable standard and shall not be pre-approved under section 328(a) of the Bankruptcy Code. No success fee or back-end fee shall be sought upon conversion of the chapter 11 cases, dismissal of the chapter 11 cases for cause, or the appointment of a trustee;

    h. For a period of three years after the conclusion of the engagement, neither CMAG nor any of its affiliates shall make any investments in the Debtors or the reorganized Debtors;

    i. CMAG shall disclose any and all facts that may have a bearing on whether CMAG, its affiliates, and/or any individuals working on the engagement have any interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason. The obligation to disclose identified in this subparagraph is a continuing obligation; and

    j. The Debtors are permitted to indemnify those persons serving as executive officers (the CRO and CFO) on the same terms as provided to the Debtors' other officers and directors under the corporate bylaws and applicable state law, along with insurance coverage under the Debtors' director and officer liability insurance policies.

5. There shall be no other indemnification of CMAG or its affiliates.

6. Notwithstanding the Engagement Letter:

    a. any controversy or claim with respect to, in connection with, arising out of, or in any way related to the Motion or the services provided by the CRO, CFO, or Additional Personnel to the Debtors as outlined in the Motion, including any matter involving a successor in interest or agent of any of the Debtors or of CMAG, shall be brought in this Court;

4

        b.      CMAG, the Debtors, and any and all of their successors and assigns, consent to the jurisdiction and venue of the Court as the exclusive forum for the resolution of CMAG's and the Debtors' claims, causes of actions, or lawsuits described above (unless the Court does not have or retain jurisdiction over such claims or controversies);

        c.      CMAG and the Debtors, and any and all successors and assigns, waive trial by jury, such waiver being informed and freely made; and

        d.      CMAG and the Debtors will not raise or assert any defense based upon jurisdiction, venue, abstention, or otherwise to the jurisdiction and venue of this Court to hear or determine any controversy or claims with respect to, in connection with, arising out of, or in any way related to the Motion or the services provided hereunder.

7.      Notice of the Motion as provided therein is deemed to be good and sufficient notice of such Motion, and the requirements of the Local Rules are satisfied by the contents of the Motion.

8.      All payments authorized by this Order may be made solely to the extent in compliance with the Approved Budget (as defined in the interim or final order authorizing the Debtors to obtain postpetition senior secured financing and related relief (the "DIP Order")) then in effect. To the extent there is any inconsistency between the terms of this Order and the DIP Order, the DIP Order shall control.

9.      Notwithstanding the possible applicability of Bankruptcy Rules 6004, 7062, or 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

10.      The relief granted herein shall be binding upon any chapter 11 trustee appointed in these chapter 11 cases, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of these chapter 11 cases to cases under chapter 7.

11. CMAG shall use its reasonable efforts to avoid unnecessary duplication of services provided by any other professionals retained by the Debtors.

12. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

13. To the extent that there may be any inconsistency between the terms of the Motion, the Engagement Letter, and this Order, the terms of this Order shall govern.

14. The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

6

DOCS_LA:338272.6

**<u>Exhibit 1 to Order</u>**

**Engagement Letter**

## ADVISORY AGREEMENT

ADVISORY AGREEMENT dated as of April 19, 2021 (this "Agreement"), by and between Avadim Health, Inc., with its principal place of business at 81 Thompson Street, Asheville, NC 28803 ("Avadim" or the "Company") and Carl Marks Advisory Group LLC, a New York limited liability company with its principal place of business at 900 Third Avenue, New York, NY 10022 ("CMAG").

WHEREAS, Avadim desires to engage the advisory services of CMAG, subject to and on the terms and conditions hereinafter set forth; and

WHEREAS, CMAG has agreed to provide such advisory services subject to and on such terms and conditions.

NOW, THEREFORE, in consideration of the above premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Engagement**: Avadim engages CMAG, and CMAG hereby agrees to serve Avadim, as an advisor and to provide the services described in Section 2 hereof (the "Engagement"). Avadim understands and acknowledges that CMAG has and will continue to have other engagements during the term of this Agreement.

2. **Scope**: CMAG will provide Keith S. Daniels to serve as Chief Restructuring Officer ("CRO") and Mark L. Claster as Restructuring Professional, supported and assisted by other CMAG representatives, to work in conjunction with management while reporting to the Company's Board of Directors Restructuring Committee (the "Restructuring Committee") to assist the Company with its exploration and implementation of go forward business strategic options (the "Restructuring") and shall have such other duties as the Restructuring Committee may from time to time determine.

In addition to Mr. Daniels, CMAG will provide the following team resources which specific staff may be adjusted over time as appropriate with CMAG's efforts to perform the representative work tasks as outlined below:
- Scott Pasquith to serve as Chief Financial Officer to perform the normal and customary duties associated therewith;
- Don Stires will oversee and assist in the sales and manufacturing operations of the Company including responsibilities of product and inventory management, plant operations effectiveness, and vendor and sourcing efficiency;
- Jonathan Killion will oversee corporate planning function and develop and coordinate business process improvements; and
- Aidan Black to provide analytic support to the team in the above tasks.

In that connection, the CRO, supported by other CMAG resources, will perform the following:
- » Oversight/management of the business and direction of functional business team's as well as overall business improvement and restructuring activities. Provide additional management of financial resources required to implement and further develop business improvement/profit improvement programs intended to increase EBITDA and cash flow;
    - o Identify and implement further potential revenue enhancement and operating/G&A cost cutting opportunities, in the context of both an in and out-of-court restructuring;
    - o Assess advertising strategies and expenditures and other key drivers of the business; and
    - o Assist Avadim in developing cash flow forecasts and liquidity budgets to help manage cash;
        - ▪ Approve all disbursements.
- » Obtain and analyze latest detailed financial and operating information on the

business to include overall financial performance, operating policies, forecasts, etc.;
- ○ Review forecasts, revenue and expense assumptions, and future capital expenditure requirements of the Company.
» Assist managing vendor relationships;
» Serve as the principal contact with the Company's creditors, banks, and other secured lenders with respect to the Company's financial and operational matters;
» Create and implement employee incentives, employee retention plans, and other critical employee benefit programs;
» Work with the Company's counsel with the objective to optimize the Company's capital structure and evaluate strategic alternatives, including both in-court and out-of-court restructuring options, to help ensure ongoing viability of the business;
- ○ Providing advice and testimony in connection with the Restructuring.
- ○ Assess bankruptcy considerations including impacts to the organization and other stakeholders; and
- ○ Develop implementation plans including costs, timing, and resource requirements intended to improve profitability that may involve operational changes and rejection of executory contracts that may be possible in Chapter 11.
» Assisting the Restructuring Committee in managing and overseeing the financial restructuring of the business, assets, liabilities, and interests of the Company and its subsidiaries;
» Assist the Company's management with all issues related to executing and overseeing the Restructuring;
» As applicable, assist Avadim and its counsel in the preparation and administration of a bankruptcy filing and provide post-petition services to include;
- ○ Assist Company counsel and retained notice/claim agent in preparation of first day and other pleadings, Schedules and Statements of Financial Affairs, and other court filings as necessary;
- ○ Assist the Company in reconciling claims, confirming balances, quantifying landlord rejection claims, and other dispute resolution;
- ○ Support the fulfillment of US Trustee information requests and prepare monthly operating reports (MOR's) as required;
- ○ Assist in handling requests from Creditor Committee professionals; and
- ○ Support DIP/Cash Collateral cash flow monitoring and reporting.
» Provide support post-petition/post-closing of potential Restructuring:
- ○ Assist purchaser with transition, including contract and intellectual property assignments;
- ○ Oversee administration of "Bankruptcy Estate";
- ○ Provide necessary Bankruptcy Administrator reporting, etc.; and
- ○ Wind-down legal entities, file final tax returns, and work with counsel on any legal issues including closing case.
» Participate in conference calls and attend meetings of, the Company's Board of Directors, creditors, or other parties in interest as applicable; and
» Perform other tasks and duties related to this Engagement as are directed by Avadim's Restructuring Committee and reasonably acceptable to CMAG.

It is acknowledged and agreed that throughout the Engagement, CMAG will have full access, as required, to internal and external constituents and that during the term of the Engagement, CMAG shall be authorized to freely communicate and discuss the Company's prospects with all of the Company's stakeholders, including its Senior Lenders, the Restructuring Committee (but not the stockholders) without prior approval of the Company.

3. **Term**: The term of this Agreement (the "Term") shall commence as of the date of this Agreement and shall continue until the Engagement is terminated, in which event all compensation and expenses under Sections 4 and 5 of this Agreement owing to CMAG pursuant to the terms of this Agreement below shall be immediately due and payable. The Company shall have the right to terminate this agreement (i) without Cause, on thirty (30) business days' written notice and (ii) immediately for Cause. CMAG shall have the right to terminate this Agreement on thirty (30) days written notice.

4. **Compensation**: For providing the advisory services as outlined in Section 2 above,

Avadim shall pay CMAG the Monthly Advisory Fee on a Monthly basis of $450,000 per monthly period. Avadim shall pay CMAG such Monthly Advisory Fee in advance, via wire transfer, beginning upon the execution of this Agreement and at the beginning of each subsequent monthly period thereafter in which advisory services are to be provided. CMAG shall also increase the retainer, which was received from Avadim under the Prior Agreement, to an amount equal to $150,000, to be applied against unpaid fees and expenses, if any. Any unused portion of the retainer shall be returned to Avadim at the completion of CMAG's services under this Agreement. CMAG will submit advisory service fee invoices for each payment due. It is agreed that all of those invoices will be paid upon receipt utilizing the following wiring instructions:

    Account Name: Carl Marks Advisory Group LLC
    Account #: 967-345073
    ABA #: 021 000 021
    Bank Name: JP Morgan Chase
    Branch Address: 500 Stanton Christiana Road
    Newark, DE 19713-2107
    Reference: (Your Invoice Number & Client Number)

5. **Expenses**: CMAG shall be entitled to reimbursement for all reasonable, out of pocket, expenses incurred by it in the performance of its duties hereunder (the "Expenses") upon presentation of appropriate documentation therefore. The Expenses shall include, but not be limited to, transportation of any of CMAG personnel, employees or associates on business related to the Engagement, cost of hotels, meals, research, etc. Such Expenses shall also include, but not be limited to, all reasonable legal fees incurred by CMAG in connection with the performance of the Engagement, provided that Avadim first consents to the retention of such counsel for such services (which consent shall not be unreasonably withheld or delayed). CMAG's rights to such legal fees shall be in addition to CMAG's rights to attorney's fees, expenses and costs as provided in Section 16 of this Agreement. All Expenses will be reimbursed by Avadim upon receipt of invoices therefore, which shall be submitted promptly after the end of each week in which CMAG renders services.

6. **Indemnification**: Avadim will indemnify CMAG and hold it harmless for all acts or omissions, and all decisions made, by CMAG (other than such acts or omissions that may be determined by final order of a court of competent jurisdiction to constitute gross negligence or willful misconduct by CMAG) while performing services for Avadim and agrees to pay directly, upon presentation thereof, all statements or invoices for all fees and expenses, including reasonable attorneys' fees incurred by CMAG in connection with the defense of any such claims, including any suit or proceeding relating thereto and any appeal therefrom and the costs of any settlement thereof, _provided_ that with respect to costs incurred in any appeal of a judgment, Avadim first consents to appealing such judgment (which consent shall not be unreasonably withheld or delayed) not withstanding anything to the contrary in Section 5. CMAG shall have the sole right to select counsel of its choosing and control the defense of any such Claim, but Avadim shall have the right to accept or reject the settlement of any Claim for which indemnification is sought by CMAG hereunder (which acceptance or rejection shall not be unreasonably withheld or delayed). For purposes of this Section "CMAG" includes its members, officers, directors, employees and/or agents and CMAG's affiliates, and each of their respective shareholders, members, officers, directors, employees and/or agents. The provisions of this Section 6 shall survive the term of this Agreement. CMAG's rights under this Section 6 shall be in addition to CMAG's rights to attorney's fees, expenses and costs as provided in Section 5 of this Agreement.

7. **Proprietary Work Product and Confidential Company Information**: Avadim acknowledges and agrees that any work product including, without limitation, any information, advice, recommendations or other content of any reports, presentations or other communications produced by CMAG is for the sole use of Avadim and is not intended for distribution to, or to be relied upon by, any third party.

In addition, CMAG acknowledges and agrees that as a result of the services to be provided hereunder, the persons performing such services may acquire knowledge and information of a secret and confidential nature. CMAG further acknowledges and agrees that this information constitutes valuable property of Avadim generally not being disseminated or made known to persons or organizations outside Avadim at all, or if made known, being done so only under specific and restrictive conditions such as to ensure that it does not become readily available to the public, and also that confidential

information as others may be required by law even without its use or disclosure. Accordingly, CMAG agrees that:

(i) CMAG and any person performing any services for CMAG hereunder shall not, during the term of this Agreement or at any time thereafter, disclose to anyone outside Avadim or use in other than Avadim's business any secret or confidential information of Avadim or its subsidiaries, except as authorized by Avadim. Avadim information that is not readily available to the public shall be considered secret and confidential for the purpose of this Agreement and shall include, but not be limited to, information relating to Avadim, its subsidiaries, customers, processes, products, apparatus, data, compounds, business studies, business and contracting plans, business procedures and finances;

(ii) CMAG and any person performing any services for CMAG hereunder shall not, during the term of this Agreement or at any time thereafter, disclose to any other person or use secret or confidential information of others, which, to the knowledge of CMAG, has been disclosed to Avadim with restriction on the use or disclosure thereof, in violation of those restrictions;

(iii) CMAG and any person performing any services for CMAG hereunder shall not, during the term of this Agreement or at any time thereafter, disclose to Avadim or induce Avadim to use, without prior permission of the owner, any secret or confidential information or material of others of which CMAG is or may become possessed; and

(iv) Notwithstanding the foregoing, CMAG and any person performing services for CMAG hereunder shall not be liable for the disclosure of information which may otherwise be deemed confidential hereunder:

(a) if the information is in, or becomes part of, the public domain, other than by CMAG's disclosure of the information;

(b) if the information is furnished to a third party by Avadim without restriction on the third party's right to disseminate the information;

(c) if the information is already of record in CMAG's files at the time of disclosure, or is disclosed to CMAG by a third party as a matter of right;

(d) if the information is disclosed with Avadim's written approval; or

(e) if CMAG is compelled to reveal such information by subpoena, civil investigative demand or other judicial or administrative process.

The provisions of this Section 7 shall survive for a period of twelve (12) months following the termination of this Agreement.

8. **Client Cooperation; Reliance on Client's Information**: Avadim acknowledges and agrees that the ability of CMAG to perform the Engagement requires the full cooperation and assistance of Avadim and its personnel. Accordingly, Avadim covenants and agrees to furnish to CMAG all information, documents and other materials requested by CMAG and to make available to CMAG for meetings, conference calls and otherwise all personnel designated by CMAG to enable CMAG to receive on a timely basis, in writing and verbally, all information requested by CMAG related to the Engagement under this Agreement. Avadim acknowledges and agrees that CMAG, in performance of the Engagement, will be relying on the truth, completeness and accuracy of the written documentation delivered and the verbal communications made by Avadim and its representatives to CMAG in connection with all matters relating to the Engagement.

9. **Conflicts of Interest**: Nothing contained in this Agreement or otherwise, shall diminish or impair the right of CMAG to accept engagements, directly or indirectly, from Avadim's lender(s) or other professionals or other third parties provided such engagements do not involve the relationship of the lender(s), other professionals or other third parties to Avadim.

10. **Limitation on Liability**: If CMAG fails to perform its obligations or is otherwise in breach of or default under this Agreement, the maximum liability of CMAG in respect thereof shall be limited to an amount equal to the aggregate of all fees actually paid to CMAG pursuant to this Agreement.

11. **Representations**: Each party represents and warrants to the other that: (a) it has all requisite power and authority to enter into this Agreement and to perform its obligations hereunder, (b) this Agreement has been fully and duly authorized by all necessary action and has been duly executed and delivered by it, and (c) constitutes a valid and binding agreement enforceable against it in accordance with its terms.

12. **Notices**: All notices, requests, demands and other communications provided for by this Agreement shall be in writing addressed to the parties at the address for such party first set forth above, and shall be transmitted by either facsimile (fax), email to the email address below the signature block, personal or overnight courier delivery or by certified mail. All notices, etc. shall be deemed given when received by the party to whom it is addressed.

13. **Successors and Assigns**: This Agreement shall inure to the benefit of, and be binding upon, each of Avadim and CMAG and their respective successors and assigns. Neither party may assign its rights and/or obligations under this Agreement without the written consent of the other party.

14. **Applicable Law**: This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, without reference to principles of conflicts of law. Any action arising from or related in any way to the Agreement shall be brought only in the federal or state courts located in New York City.

15. **Amendments**: No amendment, modification, termination or waiver of any provision of this Agreement or consent to any departure by any party therefrom shall be effective unless in writing signed by the parties hereto, and, in any event, shall be effective only in the specific instance and for the specific purpose for which given.

16. **No Waiver; Cumulative Remedies; Prevailing Party**: No failure or delay on the part of either party in exercising any right, power or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, power or remedy preclude the exercise of any other right, power or remedy. The remedies herein provided are cumulative and not exclusive of any remedies provided by law. Any party prevailing with respect to a dispute regarding this Agreement shall be entitled to reimbursement of such parties' legal fees and expenses. For the avoidance of doubt, the preceding sentence regarding prevailing parties shall not mitigate the Company's obligations under Section 5 and 6 of this Agreement.

17. **Headings**: Headings in this Agreement are for convenience only and shall not be used to interpret or construe its provisions.

18. **Counterparts**: This Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

19. **Waiver of Jury Trial**: Each of the parties to this Agreement hereby waives its right to a jury trial with respect to any claim, action, suit or proceeding made or brought by one of the parties against the others in connection with or arising under this Agreement.

20. **Publication**: CMAG may, at its expense, place an announcement in such newspapers, periodicals, electronic publications and other print as CMAG may choose stating that CMAG has acted as an advisor for the Company in connection therewith.

21. **Independent Contractor Relationship**: CMAG shall serve as an independent contractor to Avadim pursuant to the terms and conditions of this Agreement. This Agreement does not create and shall not be construed to create a relationship of principal and agent, joint venturer, co-partners, employer and employee, master and servant or any

similar relationship between CMAG and Avadim, and the parties expressly deny the existence of any such relationship.

22. **Non-Solicitation**: For a period of two-years from the date of this Agreement, or one-year following its termination, whichever is later; Avadim, (or any of its subsidiaries) will not (A) solicit or cause to be solicited any employee, agent or representative of CMAG with whom Avadim, (or any of its subsidiaries) has had contact, or who became known to Avadim, (or any of its subsidiaries) during CMAG's provision of services; or (B) hire or cause to be hired any employee, agent or representative of CMAG, with whom Avadim, (or any of its subsidiaries) has had contact, or who became known to Avadim, (or any of its subsidiaries) during CMAG's provision of services and who was, within twelve (12) months of such proposed hiring, an employee, agent or representative of CMAG.

23. **Bankruptcy Court Approval**: In the event that the Company is or becomes a debtor under Chapter 11 of the Bankruptcy Code, whether voluntarily or involuntarily, the Company shall promptly seek an order authorizing the employment of CMAG pursuant to the terms of the Agreement, as a professional person pursuant to, and subject to the standard of review of, Section 363 of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and applicable local rules and orders and any other order or orders of the Bankruptcy court regarding the payment of professional fees and expenses and not subject to any other standard of review under Section 330 of the Bankruptcy Code. Following entry of the order authorizing the employment of CMAG, the Company shall pay all fees and expenses due pursuant to this Agreement, as approved by the court having jurisdiction of the bankruptcy case involving the Company (the "Bankruptcy Court"), as promptly as possible in accordance with the terms of this Agreement and the order of such Bankruptcy Court, the Bankruptcy Code, the Bankruptcy Rules, any applicable debtor-in-possession financing or cash collateral orders, and applicable local rules and orders of the Bankruptcy Court, and will work with CMAG to promptly file any and all necessary applications regarding such fees and expenses with the Bankruptcy Court. CMAG shall have no obligation to provide services under this Agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless CMAG's retention under this Agreement is approved under Section 363 of the Bankruptcy Code by final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is acceptable to CMAG in all respects. If the order authorizing the employment of CMAG is not obtained, or is later reversed or set aside for any reason, CMAG may terminate this Agreement, and the Company shall reimburse CMAG for all fees and expenses reasonably incurred prior to the date of expiration or termination, subject to the requirements of the Bankruptcy Code, Bankruptcy Rules, any applicable debtor-in-possession financing or cash collateral orders, and applicable local rules and orders and any other applicable order or orders of the Bankruptcy Court. Prior to commencing a Chapter 11 case, the Company shall pay all amounts then due and payable to CMAG in immediately available funds. The terms of this Section are solely for the benefit of CMAG, and may be waived, in whole or in part, only by CMAG.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective officers thereunto duly authorized, as of the date first written above.

**AVADIM HEALTH, INC.**

By: _/s/ Charles Owen III_

Charles Owen III
Chair, Restructuring Committee
Email: cdo3@msn.com

**CARL MARKS ADVISORY GROUP LLC**

**CARL MARKS ADVISORY GROUP LLC**

By: _____
     Mark L. Claster
     Partner
     Email: mclaster@carlmarks.com